**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ROBERT RIOS,**

    **Plaintiff,**

v.                                                                       **Case No.  8:04-cv-1980-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                                     /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was twenty-seven years of age at the time of his administrative hearing. He stands 5', 7" tall and weighed 175 pounds. Plaintiff has an eighth grade education[1] and no vocationally relevant past work experience. Plaintiff was found disabled in January 1987 based on the criteria for childhood disabilities (Plaintiff was twelve years old at the time).[2] In February 2001, the Security Administration (hereinafter "SSA") notified Plaintiff by letter that it intended to perform a disability redetermination pursuant to Public Laws 104-193 and

---

[1] The ALJ reported that Plaintiff was twenty years old and had an eleventh grade education. (R. 21).

[2] It appears that Plaintiff's childhood disability resulted primarily from his heart condition, borderline intellectual functioning, and a developmental delay disorder.

105-33.³  In response, Plaintiff completed a Report of Continuing Disability claiming to be still disabled due to heart problems.  On August 21, 2001, the SSA informed Plaintiff that it determined that his disability had ceased on August 1, 2001, due to medical improvement, and that his payments would end after October 2001.  Plaintiff requested reconsideration of the cessation determination, but he failed to appear for a hearing conducted by a Hearing Officer of the Disability Determination Service.  The Hearing Officer issued a determination on December 28, 2001, affirming the cessation determination.

Upon a timely request, Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").⁴  In essence, Plaintiff claimed that he could not work at any job due to a heart condition and chest pains, for which he takes nitroglycerin and other medications.  Plaintiff testified that he gets tired and short of breath and blacks out.  Plaintiff also testified that he sometimes experiences heart palpitations when he is sitting down.  Additionally, Plaintiff complained of low blood platelets, a toothache, inability to sleep at night, an earache, and lower back pain.

Plaintiff lives by himself in an apartment next to his father.  He has a driver's license but does not drive because he does not have a vehicle.  Because of this lack of transportation and inability to walk for long distances, Plaintiff has difficulty keeping appointments with his doctors who are far away.  He typically stays at home, watches television, and cleans his

---

³As indicated by the ALJ, these laws require the SSA "to perform a disability redetermination for all SSI childhood recipients who were eligible as children in the month before they attained age 18.  The amended statute required that these beneficiaries have their eligibility redetermined under the adult standard used for evaluating initial claims.  The redetermination was to occur either during the one-year period beginning on the individual's eighteenth birthday or in lieu of a continuing disability review when the Commissioner determined that an individual's case was subject to redetermination."  (R. 20).

⁴Plaintiff was not represented at the hearing.  According to the ALJ, Plaintiff "elected to proceed without representation."  (R. 20-21).

2

apartment, but he does not cook or shop for himself.  Plaintiff testified that he typically goes to sleep at 8:00 p.m. and wakes up at around 11:00 a.m.  He indicated that when he receives his checks, his uncle, who owns the rental property in which Plaintiff lives, cashes the check for him and retains the rent and utility payments, and his cousin does his shopping.  Plaintiff testified that he is unable to read.  He has siblings who live in New Jersey, and his mother lives in Puerto Rico.  His father is unable to speak English or read or write.  As for work, Plaintiff stated that he had only worked one day washing dishes when he stopped receiving his SSI checks.[5]  According to Plaintiff, no one would hire him because he had no skills and could not read.  See Plaintiff's testimony (R. 509-18, 519-21, 523-24, 525, 526, 527-29).

The ALJ next took testimony from Dr. Owen Linder, a medical expert (hereinafter "ME") obtained by the ALJ for the purposes of clarifying or interpreting the medical evidence of record.  In this doctor's opinion, there was no medical evidence that Plaintiff's condition(s) met or equaled the severity of any listed impairment.  See ME's testimony (R. 518-22).

The ALJ also took testimony from Joyce Courtright, a vocational expert (hereinafter "VE"), who testified upon an assumption of a twenty-seven-year-old individual with an eighth grade education who complains of chest pains upon activity and inactivity; is unable to stand or sit too long; cannot walk too far; and cannot read.  Upon this assumption, the VE testified that Plaintiff would be unable to perform any jobs in the national economy because of the inability to do any activity.  Upon an assumption that the Plaintiff's testimony was exaggerated and in consideration of an individual with an eighth grade education who could read somewhat, has a driver's license, and is able to live alone and care for himself, the VE opined that Plaintiff could perform bench assembly occupations such as small parts

---

[5]Plaintiff indicated that he also had done some cleaning work for his school in September 1990 and June 1992.

assembler; wrapping and packaging occupations such as poly packing and heat sealing; light machine or machine ending occupations such as injection molding machine tending; and reproduction occupations. See VE's testimony (R. 524-27).

Also before the ALJ were medical records outlining the Plaintiff's medical history.[6] These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of December 14, 2002, the ALJ found that while Plaintiff has severe impairments related to a history of ventral septal defect with remote repair; remote tricuspid valvuloplasty; current tricuspid regurgitation; idiopathic thrombocytopenia; and cervical, thoracic, and lumbosacral strain, he nonetheless had the residual functional capacity to perform a wide range of sedentary work.[7] Upon this finding and application of the Medical Vocational Guidelines, the ALJ concluded that Plaintiff's disability ceased as of August 1, 2001, as he was over eighteen and did not meet the criteria for a finding of disability as an adult. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 28-29). The

---

[6]The record on appeal also contains certain medical records that Plaintiff submitted to the Appeals Council but were not before the ALJ. See (R. 7, 352-506). Plaintiff, however, does not seek a sentence six remand for consideration of new evidence. Accordingly, those records are not considered in determining whether the ALJ's decision is supported by substantial evidence. See Falge v. Apfel, 150 F.3d 1320, 1322-23 (11th Cir. 1998) (providing that, while evidence presented for the first time to the Appeals Council is part of the record, only evidence presented to the ALJ will be considered in determining whether substantial evidence supports the ALJ's decision).

[7]The ALJ noted initially that a redetermination of eligibility after age eighteen was never performed in Plaintiff's case; rather, it was determined that Plaintiff's eligibility for SSI income payments had ceased due to medical improvement. Because that determination was made under the adult criteria for disability, the ALJ treated Plaintiff's case as an age eighteen redetermination and did not address the improvement standard that would otherwise be an issue. (R. 21). The parties do not challenge this.

4

Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ decided the Plaintiff's claim in part pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. See 20 C.F.R. §§ 404.1501, et seq. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." Id. at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. Id. at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three broad claims on this appeal.  In particular, Plaintiff challenges the ALJ's findings with respect to: (1) treating source evidence; (2) credibility / combination of impairments; and (3) vocational expert [testimony].

Because Plaintiff's third claim necessitates remand, it is the only one addressed.  By this claim, Plaintiff summarily complains that the ALJ "erred in questioning of the VE" and "must pose a hypothetical question to the VE which comprehensively describes" his impairments.  The Commissioner correctly notes that the ALJ here did not rely upon his limited questioning of the VE but applied the grids to resolve Plaintiff's claim.  Thus, prior to addressing Plaintiff's claim, the court must address whether the ALJ's reliance on the grids for decision was appropriate.  For the reasons that follow, the court finds that it was not.

The inquiry here involves the recurring issue of whether the ALJ may rely exclusively on the grids for decision, or whether a vocational expert is required.  As noted recently by the Eleventh Circuit, "[t]he general rule is that after determining the claimant's [residual functional capacity] and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  It is well established, however, that it is *inappropriate* for the ALJ to rely exclusively on the grids if the claimant is unable to perform a full range or unlimited types of work given the claimant's exertional limitations and/or if the claimant has non-exertional impairments that significantly limit the claimant's ability to perform basic work skills.  Id.; Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989); Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).  The decision in Foote offers further guidance on this matter:

7

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . . The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors . . . Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . . Pain is a nonexertional impairment. . . . Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony.

Id. at 1559 (citations omitted).

Thus, as indicated above, nonexertional limitations cause the grids to be inapplicable only when they are severe enough to prevent a wide range of gainful employment at a given exertional level. Id.; see also Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). Where an ALJ makes a specific finding that a claimant's nonexertional limitations do not preclude a wide range of employment at the given exertional level, that finding is reviewed only to determine whether it is supported by substantial evidence. Sryock, 764 F.2d at 836. To this end, the Eleventh Circuit has held that, "[a]n ALJ's conclusion that a claimant's limitations do no significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert." Marbury, 957 F.2d at 839 (citing Allen, 880 F.2d at 1202).[8]

---

[8]In Marbury, the ALJ found certain nonexertional impairments including seizure disorder, peptic ulcer disease and an affective disorder; however, he determined the Plaintiff could do a full range of light work and no vocational expert was necessary. In rejecting this conclusion and the ALJ's reliance on the grids, the court stated, "it is only when the claimant

8

Upon careful consideration and in light of the above authority, I conclude that the ALJ erred by relying exclusively on the grids. Here, the ALJ determined Plaintiff's heart condition and neck/back strain limited him to lifting or carrying up to twenty pounds occasionally and ten pounds frequently; walking or standing no more than two hours per eight-hour workday and sitting for up to six hours per workday; occasional climbing of ramps and stairs but no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and no exposure to air pollutants, hazardous machinery and extremes in temperature.[9] (R. 26-27). Notwithstanding this assessment, the ALJ determined further that "occasional postural limitations and moderate environmental restrictions do not significantly affect the job base for sedentary work." (R. 28). As a result, he concluded that "because the evidence supports a finding that the claimant can perform the demands of the

---

can clearly do *unlimited* types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Id. 957 F.2d at 839 (citing Allen, 880 F.2d at 1202, and quoting Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981) (emphasis in original)). The court concluded that upon the ALJ's findings that Plaintiff suffered nonexertional impairments, "it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights and dangerous moving machinery." Marbury, 957 F.2d at 839 (emphasis in original). Accordingly, expert testimony was required to determine whether the claimant's limitations were severe enough to preclude him from performing a wide range of light work. Id., see also Phillips, 357 F.3d at 1242-44.

[9]This assessment appears to rely solely on the opinions of the non-examining state agency doctors. In July 2001, a reviewing, state agency doctor opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for at least two hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme heat and extreme cold; and should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. (R. 222-29). In October 2001, another reviewing doctor concurred, for the most part, with the first. See (R. 341-47). The ALJ adopted the first doctor's opinion outright. No treating or examining physician commented on Plaintiff's functional capacity, and the ALJ did not question the ME about Plaintiff's physical ability to perform work-related activities.

9

wide range of sedentary work, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.24." Id.  Thus, while the ALJ arguably made an explicit finding that Plaintiff's [nonexertional] limitations did not significantly limit his basics work skills in accordance with the requirement set forth in Sryock, i.e., they did not significantly erode the occupational base of sedentary exertional jobs, his finding is not supported by substantial evidence in the absence of vocational expert testimony addressing such.[10]  See Marbury, 957 F.2d at 839, Allen, 880 F.2d at 1202.  Under these circumstances, the ALJ was required to obtain vocational expert testimony on this matter before concluding that Plaintiff's nonexertional limitations did not significantly erode the sedentary exertional job base, and remand for further consideration on this ground is warranted.[11]

      Because the ALJ will necessarily revisit his determinations regarding treating physician testimony and Plaintiff's subjective allegations after considering additional medical

---

[10] A number of other decisions in this circuit have also determined the need to call a vocational expert in lieu of exclusive reliance on the grids.  See Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988) (limitation on climbing, balancing, working at heights or around dangerous machinery); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) (postural and manipulative limitations); Gibson v. Heckler, 762 F.2d 1516, 1521 (11th Cir. 1985) (limitation on sitting and standing); McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988) (limitation on sitting and standing); Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990) (pain and dizziness); Falcon v. Heckler, 732 F.2d 827 (11th Cir. 1984) (depression and low back pain); Patterson v. Bowen, 799 F.2d 1455, 1459 (11th Cir. 1986) (limited grip strength and dexterity).

[11] While the Commissioner's citation to Social Security Ruling 96-9p in support of a contrary finding is not completely without merit, she ignores that the ruling also states that the unskilled occupational base for sedentary work *may or may not* be eroded by environmental restrictions related to exposure of noise, dust, or odors.  See SSR 96-9p, 1996 WL 374185, * 9 (S.S.A.).  The Commissioner also fails to address the abundance of controlling case law to the contrary.  In any event, the decision does not reveal the source for the ALJ's conclusions in this regard.

evidence on remand, the court need not address Plaintiff's other claims.[12]  See Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 28th day of December 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

---

[12] The court is compelled to comment on one aspect of the ALJ's decision that the Plaintiff did not challenge, namely, the ALJ's finding that Plaintiff's waived his statutory right to counsel and elected to proceed without representation.  In the court's view, the inquiry by the ALJ fell short of that necessary ro establish a knowing and intelligent waiver of counsel in this instance.  See, e.g., (R. 509-10).